LEGAL ASSISTANCE FOR VIET-
NAMESE ASYLUM SEEK-
ERS, et al., Appellants,

v.

DEPARTMENT OF STATE, BUREAU
OF CONSULAR AFFAIRS, et al.,
Appellees.

Nos. 94–5104, 95–5425 and 96–5058.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 26, 1996.

Decided Jan. 7, 1997.

Daniel Wolf, argued the cause, for appellants, with whom William R. Stein, Washington, DC, M. Kathleen O'Connor, Dallas, TX, and Robert B. Jobe, San Francisco, CA, were on the briefs.

Edwin S. Kneedler, Deputy Solicitor General, argued the cause, for appellees pro hac vice, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, Michael J. Singer, Assistant Director, United States Department of Justice, and Robert M. Loeb, Attorney, were on the brief. Catherine W. Brown, Attorney, Washington, DC, United States Department of State, entered an appearance.

Before: EDWARDS, Chief Judge, and SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

These consolidated cases present challenges to the Department of State's consular venue policy. Plaintiffs assert that the policy discriminates on the basis of nationality in violation of Section 202 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1152(a)(1). Plaintiffs also claim that the policy is arbitrary and capricious within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), and that it violates the equal protection component of the Fifth Amendment's Due Process Clause. We conclude that under a recent amendment to the INA, plaintiffs' statutory and APA claims are unreviewable. We also hold that the constitutional claim has no merit.

I.

Because we discuss the background of the State Department policy at issue and this litigation in some detail in our opinion in *Legal Assistance for Vietnamese Asylum Seekers v. Department of State, Bureau of Consular Affairs*, 45 F.3d 469 (D.C.Cir.1995), *reh'g denied*, 74 F.3d 1308 (D.C.Cir.), *vacated*, —— U.S. ——, 117 S.Ct. 378, —— L.Ed.2d —— (1996) [hereinafter *LAVAS*], we present an abbreviated version here. During the 1980s an overwhelming number of migrants from Vietnam and Laos fled their home countries seeking refuge in other countries in Southeast Asia. To deal with the migration crisis some 50 countries, including the United States, entered into an international agreement known as the Comprehensive Plan of Action ("CPA"). Under the CPA, Vietnamese and Laotian migrants who land in other countries are screened by local officials to determine refugee status. Those migrants who are "screened-out," that is determined not to be refugees, are repatriated. A repatriated migrant may then apply for an immigrant visa from his home country. Until 1993, the United States Consulate General in Hong Kong processed the visa applications of migrants before, and sometimes after, they were screened-out as nonrefugees. Other nations party to the CPA objected that this practice encouraged further migration, so the State Department adopted a policy against processing visa applications of "screened-out" Vietnamese or Laotian migrants in Hong Kong. Under current State Department policy, the migrant is repatriated and his visa application is processed in his home country.

In 1994, two Vietnamese migrants, the migrants' sponsors in the United States, and a nonprofit legal-rights organization challenged the State Department policy under Section 202 of the INA, 8 U.S.C. § 1152(a), which

prohibits United States consular officials from discriminating on the basis of nationality in the issuance of immigrant visas. The plaintiffs also claimed that the policy was arbitrary and capricious within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a), and that it violated the equal protection component of the Fifth Amendment's Due Process Clause. The district court granted the State Department's motion for summary judgment. In *LAVAS*, a divided panel of this Court reversed, holding that the consular venue policy violated 8 U.S.C. § 1152(a)(1) because the State Department had drawn a distinction between Vietnamese and Laotian nationals and nationals of other countries. 45 F.3d at 473. We did not reach plaintiffs' remaining APA or constitutional claims. The government filed a petition for rehearing and suggestion of rehearing *en banc*. In the meantime, on remand, the district court held that the case had become moot. 909 F.Supp. 1 (D.D.C.1995). The panel reversed as to mootness and held that rehearing was unwarranted. 74 F.3d 1308 (D.C.Cir.1996).

While the government's rehearing petition in *LAVAS* was pending, a separate action, *Le v. United States Dept. of State*, was filed in United States District Court. The district court, relying on this Court's opinion in *LAVAS*, granted summary judgment for plaintiffs and enjoined the Government from implementing its policy of declining to process the applications of screened-out migrants in Hong Kong. 919 F.Supp. 27 (D.D.C.1996). The Government appealed the injunction, and this Court granted initial hearing *en banc*. In the meantime, the Supreme Court granted certiorari in *LAVAS*. ─── U.S. ───, 116 S.Ct. 2521, 135 L.Ed.2d 1046 (1996). We then suspended *en banc* proceedings in *Le* pending the Supreme Court's decision.

On September 30, 1996, shortly before the Supreme Court was to hear oral argument in *LAVAS*, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRA") (enacted as Division C of the Department of Defense Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009 (1996)). Section 633 of the IIRA amends the Immigration and Nationality Act (INA) by adding the following to 8 U.S.C. § 1152(a)(1): "(B) Nothing in this paragraph shall be construed to limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications or the locations where such applications will be processed." After requesting supplemental briefing on the effects of section 633, the Supreme Court vacated our judgment in *LAVAS* and remanded the case to us for "further consideration in light of Section 633." ─── U.S. ───, 117 S.Ct. 378 (1996) (per curiam). We then consolidated *LAVAS* and *Le*.

The State Department argues that section 633 applies to plaintiffs' claim. Although section 633 was not in effect at the time the State Department enacted the new policy, the State Department asserts that Congress intended section 633 to be retroactive from its enactment. The State Department further argues that section 633 applies because the plaintiffs are seeking only prospective relief.

We need not determine whether Congress intended section 633 to apply retroactively because we hold that application of the amendment does not raise retroactivity concerns. Plaintiffs' claim raises a procedural right and is governed by the INA as amended by section 633. We also hold that this case concerns prospective relief and so does not raise problems of retroactivity. Applying section 633, we hold that the Secretary's actions are unreviewable because there is "no law to apply." We therefore reject plaintiffs' claims under the statute and the APA. Finally, we hold that plaintiffs' constitutional claim is without merit.

## II.

Plaintiffs' statutory claim raises the question of whether the case is governed by the law in effect at the time the Secretary enacted the new consular venue policy or the law as amended by section 633. The Supreme Court set out the principles for determining whether a newly enacted provision is applicable to a pending case in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Court considered whether provisions of the

1991 Civil Rights Act permitting compensatory and punitive damages in a Title VII case would apply to a case that was pending on appeal when the statute was enacted. *Id.* at 247, 114 S.Ct. at 1488. In concluding that the provisions would not govern retroactively, the Court noted that application of a statute is not retroactive "merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Id.* at 269, 114 S.Ct. at 1499 (citation omitted). Rather, the statute has a retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. at 1505. It is therefore necessary for the Court to examine the temporal relationship between the statute and the activity the statute is meant to govern.

In *Landgraf,* the Supreme Court observed that changes in procedural rules will often not raise problems of retroactivity. *Id.* at 275, 114 S.Ct. at 1502. The Court stated that "[b]ecause rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule ... retroactive." *Id.* The Court also noted that an intervening statute conferring or ousting jurisdiction may apply without operating retroactively. *Id.* at 274, 114 S.Ct. at 1502. The Court stated that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Id.* (quoting *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916)). Finally, the Court stated that, because "'relief by injunction operates *in futuro,*'" a case seeking only prospective relief is governed by the law in effect at the time of decision. *Id.* at 273–74, 114 S.Ct. at 1501 (quoting *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 201, 42 S.Ct. 72, 75, 66 L.Ed. 189 (1921)).

■ Applying the principles of *Landgraf* to this case, we conclude that application of section 633 would not raise retroactivity concerns. First, plaintiffs are asserting a proce-dural right. The challenged State Department action merely enacts a change in the procedure by which plaintiffs' visa applications are considered. This policy does not upset any substantive right. As we held in our earlier consideration of this case, plaintiffs do not have a substantive right to any particular process for having their applications considered. *See LAVAS,* 45 F.3d at 472. The Supreme Court has stated that such procedural claims do not raise retroactivity concerns. *Landgraf,* 511 U.S. at 275, 114 S.Ct. at ——.

Moreover, plaintiffs are seeking only prospective relief. Plaintiffs characterize the remedy sought as a "reparative injunction," *i.e.,* an injunction to compel the State Department to process the application of plaintiffs in a way that would remedy the effects of the Department's past illegal conduct. However, the sole purpose and effect of the injunction would be to direct the Secretary of State not to apply the consular venue policy in the future. It is true that an injunction may be considered retroactive relief when the injunction is "tantamount to an award for damages." *Cf. Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986) (distinguishing between prospective and retrospective relief in the context of the Eleventh Amendment). In *Beverly Hosp. v. Bowen,* 872 F.2d 483 (D.C.Cir.1989) (per curiam), for instance, we overturned a district court's refusal to consider granting an order that would require a hospital to consider claims for reimbursement of photocopying costs. We characterized the claim as a "matter of retrospective relief." *Id.* at 485. However, in this case the injunction would not serve as a remedy commensurate with damages for past wrongs. Instead, the injunction would serve to prevent what would allegedly be a continuing violation of the statute. The Supreme Court has made clear that in such cases the law in effect at the time of decision is to govern the availability of the relief. *Landgraf,* 511 U.S. at 273–74, 114 S.Ct. at ——.

■ Having concluded that section 633 applies, we agree with the State Department that plaintiffs' statutory and APA claims are unreviewable because consular venue deter-

minations are entrusted to the discretion of the State Department. Under the APA, a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review. 5 U.S.C. § 702. Judicial review is not available, however, if the statute precludes judicial review or the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a). Although there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967), agency action is deemed to be committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (internal quotations omitted), or there is "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). As the Supreme Court has stated, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action." *Id.* After reviewing the text of the statute and the nature of the agency action at issue we conclude that the consular venue policy falls within this category of unreviewable agency discretion.

First, the broad language of the statute suggests that the State Department policy is unreviewable. Congress has determined that "[e]very alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner *and at such place as shall be by regulations prescribed.*" 8 U.S.C. § 1202(a) (emphasis added). This section grants to the Secretary discretion to prescribe the place at which aliens apply for immigrant visas without providing substantive standards against which the Secretary's determination could be measured. Plaintiffs argue that there is a standard against which to measure the Secretary's decision in the prohibition against nationality discrimination contained in 8 U.S.C. § 1152. That argument is untenable after the adoption of section 633. That en-

actment made clear that the prohibition against nationality discrimination does not apply to decisions of where to process visa applications. These determinations are left entirely to the discretion of the Secretary of State

In addition, the nature of the administrative action counsels against review of plaintiffs' claim. By way of comparison, the Supreme Court has held that the Food and Drug Administration's refusal to take enforcement action is unreviewable because it "involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler*, 470 U.S. at 831, 105 S.Ct. at 1655–56. Similarly, in this case the agency is entrusted by a broadly worded statute with balancing complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications. However, in this case the argument for executive branch discretion is even stronger. By long-standing tradition, courts have been wary of second-guessing executive branch decision involving complicated foreign policy matters. *See, e.g., Williams v. Suffolk Ins. Co.*, 38 U.S. 415, 420, 13 Pet. 415, 10 L.Ed. 226 (1839); *Garcia v. Lee*, 37 U.S. 511, 517–18, 520–21, 12 Pet. 511, 9 L.Ed. 1176 (1838); *Foster v. Neilson*, 27 U.S. 253, 307–310, 2 Pet. 253, 7 L.Ed. 415 (1829). As we noted in another context, "where the President acted under a congressional grant of discretion as broadly worded as any we are likely to see, and where the exercise of that discretion occurs in the area of foreign affairs, we cannot disturb his decision simply because some might find it unwise or because it differs from the policies pursued by previous administrations." *DKT Memorial Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 282 (D.C.Cir.1989). In light of the lack of guidance provided by the statute and the complicated factors involved in consular venue determinations, we hold that plaintiffs' claims under both the statute and the APA are unreviewable because there is "no law to apply."

We likewise reject plaintiffs' claim that the State Department's consular venue policy violates the equal protection compo-

nent of the Fifth Amendment's Due Process Clause. Plaintiffs concede that the migrants, as aliens, may not assert a Fifth Amendment right in challenging the procedures for granting immigrant visas. *See United States v. Verdugo–Urquidez,* 494 U.S. 259, 269, 110 S.Ct. 1056, 1062–63, 108 L.Ed.2d 222 (1990). The equal protection claim must be asserted, if at all, by the citizen sponsors of the migrants. However, the State Department's policy does not depend on the national origin of the sponsor. Under the INA, a United States citizen or a permanent resident alien may sponsor an alien by filing a petition stating that the alien is an immediate relative and is eligible for an immigration preference. 8 U.S.C. § 1154(a). Employment-based immigration preferences are also available when a citizen desiring to employ an alien files a petition. 8 U.S.C. § 1154(a)(1)(D). While we can assume that a sponsor who is asserting a familial relationship to the migrant will more often than not be of Vietnamese or Laotian origins, the State Department does not require this to be the case. We have no reason to think that the nationality of an employer-sponsor at all corresponds to that of the migrant. Moreover, the substantive rights of the citizen-sponsor to a particular process cannot be greater than the right of the applicant himself, and we have concluded that the applicants have no substantive right to have their visa applications processed in any particular venue.

For the foregoing reasons, we remand to the district court for proceedings consistent with this opinion.

So ordered.