**Dana BLOCK; Martin H. Olesh; Deborah W. Olesh; Ruth Rae Wiener; Nancy Grossman; Hannah Obstfeld, Petitioners,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 94–1333.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1994.

Decided March 24, 1995.

---

H. Adam Prussin, argued the cause for petitioners. With him on the briefs was Stephen T. Gannon.

Randall W. Quinn, argued the cause for respondent. With him on the brief were Paul Gonson, Solicitor, Jacob H. Stillman, Associate Gen. Counsel, and Susan K. Straus, S.E.C.

Marvin G. Pickholz, filed the amicus curiae brief on behalf of the Dreyfus Family of Funds.

Before SILBERMAN, GINSBURG, and HENDERSON, Circuit Judges.

GINSBURG, Circuit Judge:

The petitioners are shareholders in the Dreyfus Family of Funds. They seek review of the Securities and Exchange Commission's decision not to hold a hearing in order to determine whether certain directors of the Dreyfus Funds are "interested persons" within the meaning of § 2(a)(19) of the In-

vestment Advisers Act of 1940, 15 U.S.C. § 80a-2(a)(19). We hold that the decision whether to initiate a hearing under § 2(a)(19) is within the unreviewable discretion of the SEC. Consequently, we dismiss the petition for review.

## I. BACKGROUND

The Dreyfus Funds are investment companies registered under the 1940 Act. Originally they were managed by the Dreyfus Corporation (Dreyfus), an investment adviser. On December 5, 1993, Dreyfus and the Mellon Bank Corporation entered into a merger agreement whereby a wholly owned subsidiary of Mellon would acquire all of the stock of Dreyfus. With the consummation of the merger, the investment advisory contracts between Dreyfus and the Dreyfus Funds would terminate automatically, pursuant to §§ 2(a)(4) and 15(a)(4) of the Act, 15 U.S.C. §§ 80a-2(a)(4), 80a-15(a)(4). Any new advisory contract between a Dreyfus Fund and the merged corporation would require the approval of a majority of the directors of the fund who were not "interested persons," *see* 15 U.S.C. § 80a-15(c), as that term is defined in §§ 2(a)(19)(A)(vi) and (B)(vi) of the Act.*

In the wake of the merger announcement, the petitioners filed an "application" with the Commission requesting that it hold a hearing and determine whether any directors of the Dreyfus Funds were "interested persons" under § 2(a)(19). The petitioners claimed

---

* Sections 2(a)(19)(A)(vi) and (B)(vi) provide:

> (19) "Interested person" of another person means—
> (A) when used with respect to an investment company—
>
> .    .    .    .    .
>
> (vi) any natural person whom the Commission by order shall have determined to be an interested person by reason of having had, at any time since the beginning of the last two fiscal years of such company, a material business or professional relationship with such company or with the principal executive officer of such company or with any other investment company having the same investment adviser or principal underwriter or with the principal executive officer of such other investment company: Provided, That no person shall be deemed to be an interested person of an investment company solely by reason of (aa)

his being a member of its board of directors or advisory board or an owner of its securities, or (bb) his membership in the immediate family of any person specified in clause (aa) of this proviso; and
> (B) when used with respect to an investment adviser of or principal underwriter for any investment company—
>
> .    .    .    .    .
>
> (vi) any natural person whom the Commission by order shall have determined to be an interested person by reason of having had at any time since the beginning of the last two fiscal years of such investment company a material business or professional relationship with such investment adviser or principal underwriter or with the principal executive officer or any controlling person of such investment adviser or principal underwriter....

15 U.S.C. §§ 80a-2(a)(19)(A)(vi), (B)(vi).

that "virtually all" of the "so-called 'independent' directors serving on boards of the Dreyfus Family of Funds ... [were] in fact 'interested' [persons]" with respect to Dreyfus (the Funds' investment advisor) because they served on the boards of multiple Dreyfus Funds and received substantial compensation for doing so. Accordingly, they urged that those directors "should not be permitted to meet the requirement[ ]" that a majority of non-interested directors approve any investment advisory contract. 15 U.S.C. § 80a–15(c). The petitioners also maintained that "substantially more than 60 percent of the members of the Dreyfus Fund boards [were] 'interested persons,' in violation of the Act." *See* 15 U.S.C. § 80a–10(a).

In a letter dated April 1, 1994, the Commission rejected the petitioners' application, holding that "Section 2(a)(19) does not provide a mechanism ... by which shareholders may initiate a proceeding to determine whether a person is an interested person, nor does any other provision of the federal securities laws." "Rather, the discretion to initiate such a hearing rests with the Commission, and the Commission has determined not to hold a hearing." The petitioners then filed this petition for review, asking the court to require the Commission to opine one way or the other upon the Dreyfus Funds' compliance with the 1940 Act.

## II. ANALYSIS

The petitioners argue that because they submitted an application so requesting, the Commission was required to initiate a proceeding under § 2(a)(19) of the Act. The Commission maintains that its decision not to act upon the petitioner's application is a decision not to enforce that is "committed to agency discretion by law," *see* 5 U.S.C. § 701(a)(2), and as such is insulated from judicial review under the teaching of *Heckler v. Chaney,* 470 U.S. 821, 835, 105 S.Ct. 1649, 1657, 84 L.Ed.2d 714 (1985).

### A. Does *Chaney* apply?

▇ The petitioners would avoid the presumptive bar of *Chaney* by characterizing what they ask of the Commission as a "factual determination" rather than as an enforce-

ment action, noting that § 2(a)(19) of the Act is strictly definitional and does not itself contain any prohibition. The petitioners also point out that there is a presumption in favor of the reviewability of agency inaction that does not involve enforcement. *See, e.g., Robbins v. Reagan,* 780 F.2d 37, 45 (D.C.Cir. 1985); *but see Lincoln v. Vigil,* —— U.S. ——, ——, 113 S.Ct. 2024, 2032, 124 L.Ed.2d 101 (1993) (recognizing that § 701(a)(2) applies outside of enforcement context).

The Supreme Court in *Chaney* provided no formula by which to determine whether agency decisions of a particular type are "decisions to refuse enforcement." *Chaney,* 470 U.S. at 831, 105 S.Ct. at 1655. The Court clearly included within that set, however, not only an agency's determination not to proceed against a recognized violation, but also its antecedent judgment upon the question "whether a violation has occurred." *Id.*

Having in mind that conception of the decision not to enforce, it is impossible to see the Commission's application of § 2(a)(19) to the facts of a particular case as anything other than a part of the enforcement process. Under the 1940 Act, the lawfulness of various transactions depends utterly upon whether certain parties are "interested persons"; indeed, the petitioners' whole point in going to the SEC was to establish that the Funds were in violation of the requirements that at least 60 percent of the directors of an investment company be "non-interested," 15 U.S.C. § 80a–10(a), and that a majority of the non-interested directors approve any investment advisory contract, 15 U.S.C. § 80a–15(c). In addition, we note that the investment adviser to an investment company may not lawfully profit from its assignment of an investment advisory contract to another adviser if more than 25 percent of the directors of the investment company are "interested persons" of either investment adviser, 15 U.S.C. § 80a–15(f). With respect to such a transaction, the determination whether a person is "interested" may be in effect a determination "whether a violation has occurred." *See Chaney,* 470 U.S. at 831, 105 S.Ct. at 1656. In this case, a determination that the directors of the Dreyfus Funds were "interested persons" would be tantamount to holding that

the Dreyfus Funds violated several sections of the Act. Viewed in context, then, it simply blinks reality to say that a determination under § 2(a)(19) is anything other than an enforcement decision.

The rationale underlying *Chaney* further supports its application to this case. The Supreme Court in *Chaney* noted that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." For example, reviewing the Commission's decision not to enforce § 2(a)(19) would involve this court "in decisions about [the SEC's] resource allocation and enforcement policy"; the Commission, however, not the court, "is best situated to evaluate the costs and benefits of enforcement." *See Kisser v. Cisneros,* 14 F.3d 615, 620–21 (D.C.Cir.1994) (holding agency decision not to initiate debarment action against particular persons unreviewable per *Chaney* ). The Court in *Chaney* also emphasized that, in contrast to a decision to enforce, a decision not to enforce results in no exercise of the agency's coercive power "over an individual's liberty or property rights" and, as a result, provides no focus for judicial review. 470 U.S. at 832, 105 S.Ct. at 1656; *see also Kisser,* 14 F.3d at 621.

In sum, the petitioners' characterization of § 2(a)(19) as providing only for a factual inquiry is based upon too grudging a reading of *Chaney,* one that both disregards the rationale of that decision and ignores the actual role of § 2(a)(19) in the enforcement of the 1940 Act. Where the only purpose of an investigatory hearing would be to lay the foundation for a potential enforcement action, there is a presumption against judicial review of the agency's decision not to conduct such a hearing.

**B. Does an exception to *Chaney* apply?**

■ The presumption against judicial review in *Chaney* is not irrebuttable. As the Supreme Court stated in that case, an enforcement decision that would otherwise be unreviewable is subject to judicial review if (1) the Congress or the agency itself has provided a meaningful standard for the agency to follow in exercising its enforcement power, *Chaney,* 470 U.S. at 833, 105 S.Ct. at

1656–57, or if (2) the agency has "consciously and expressly adopted a general policy ... so extreme as to amount to an abdication of its statutory responsibilities." *Id.* at 833 n. 4, 105 S.Ct. at 1656 n. 4.

The petitioners advance a number of arguments for the application of each of these exceptions. Their common theme is that the Commission's discretion is not just limited, but that the Commission has no discretion whatsoever to deny them the hearing they seek.

1. Does the 1940 Act limit agency discretion?

■ The petitioners advance three arguments to the effect that the Investment Company Act itself limits the Commission's discretion not to enforce § 2(a)(19). First, they draw an analogy between §§ 2(a)(19) and 2(a)(9) of the Act, the latter of which defines "control" of an investment company. They reason as follows: § 2(a)(9) provides that any interested person (not necessarily in the sense of § 2(a)(19)) may file an application to determine whether a person controls an investment company, and a controlling person is an "affiliated person" per § 2(a)(3) and therefore also an "interested person" within the definition in § 2(a)(19); therefore, §§ 2(a)(9) and 2(a)(19) play a similar role in protecting investors from self-dealing; therefore § 2(a)(19) should be read implicitly to contemplate a process like that provided explicitly in § 2(a)(9). Under the usual norms of statutory construction, of course, the contrast between the two sections cuts against the petitioners' position. *See, e.g., B.F.P. v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) ("it is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another"). Even if we take § 2(a)(9) to be instructive, however, it does not avail the petitioners, for not even that section provides any means by which a private party can compel the Commission to initiate an investigation or to issue an order.

Second, the petitioners argue that because the Commission entertained an application for an investigation under § 2(a)(19) in an-

other proceeding some years ago, *Matter of Fidelity Daily Income Trust,* Investment Company Act Release No. 11078, 1980 WL 29743, 1980 SEC Lexis 1900, (March 12, 1980), the Commission has acknowledged that it is required to initiate such an investigation upon the filing of an application therefor. In the earlier case, an investor submitted an application under § 2(a)(9), which, as we noted above, expressly provides for an application process; the Commission seems to have treated the investor's § 2(a)(19) claim as pendent to the underlying § 2(a)(9) matter. In any event, that the Commission chose, in its discretion, to address the § 2(a)(19) issue in *Fidelity* does not, as the Commission here points out, bind it to act upon an application submitted solely under § 2(a)(19).

Finally, the petitioners maintain that the Act must provide a means by which an investor can obtain from the Commission a determination that someone is an "interested person" under §§ 2(a)(19)(A)(vi) and (B)(vi) or else the investor's private right of action to enforce § 15(f)(1) of the Act, 15 U.S.C. § 80a–15(f)(1), to challenge the assignment of an investment advisory contract, *see Meyer v. Oppenheimer Mgt. Corp.,* 764 F.2d 76, 87–88 (2d Cir.1985), would be set to naught. In such an action, the plaintiff must demonstrate that more than 25 percent of the directors of an investment company are "interested persons," and (as can be seen in the margin above) a person is "interested" within the meaning of §§ 2(a)(19)(A)(vi) or (B)(vi) only if the Commission has so held.

We assume that the petitioners are correct in maintaining that a private action to enforce § 15(f)(1) cannot go forward without the SEC having first issued an order declaring that more than 25 percent of the directors are "interested persons" under § 2(a)(19). It simply does not follow, however, as the petitioners would have it, that "a mechanism *must* exist for investors to obtain from the Commission the necessary determinations of 'interested person' status." The private right of action to enforce § 15(f) was implied not as an end in itself but rather as "a supplement to the express enforcement provisions of the statute," *Meyer,* 764 F.2d at

87, which was meant to "incorporate [the] common law prohibition [against the sale of a fiduciary office for profit] and impose a uniform national standard" of conduct. *Id.* Therefore, the Congress seems reasonably to have conditioned the private plaintiff's right to enforce § 15(f) in court upon the sole public body expert in such matters first having determined that the national standard has been violated. Indeed, the petitioners have no quarrel with that gatekeeping conception of the SEC's role in the enforcement of § 15(f). Once that much is conceded, however, then the need to apply *Chaney* cannot be gainsaid. For there would be no hope of preserving the SEC's enforcement resources for matters it deems more pressing if the agency were obliged to respond to every application for a declaratory order under § 15(f).

Not surprisingly, the petitioners are unable to cite any authority for the proposition that where an administrative order is a prerequisite to the maintenance of a private action, the potential plaintiffs also have a private right to commandeer agency resources to act upon their application for such an order. The petitioners' representation to the contrary notwithstanding, the court in *United States v. Markgraf,* 736 F.2d 1179, 1182–83 (7th Cir.1984), most assuredly did not hold that an "agency must create a mechanism whereby interested parties can satisfy the administrative prerequisites to judicial enforcement of their rights" in a private cause of action. In *Markgraf,* the Secretary of Agriculture had refused to implement a statute under which he could forego foreclosing upon loans made by the Farmers Home Administration. The court held only that the Secretary was required to implement the statute because the Congress so intended, *id.* at 1184, an unremarkable proposition if ever there was one. *See also State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1109 (8th Cir.1973) (Secretary may not impound funds where statute requires apportionment to States); *but cf. Pennsylvania v. Lynn,* 501 F.2d 848 (D.C.Cir.1974) (Secretary may suspend housing programs for time to determine whether purpose of programs is being frustrated). Furthermore, because the statute involved in *Markgraf* did not provide,

either expressly or by implication, for a private cause of action, that case is no support for the petitioners' proposition, *viz.*, that the agency "must" punch their ticket of admission to court so that they can pursue their implied private rights in litigation. On the contrary, the *Markgraf* court recognized that once he had implemented the statute generally, the Secretary would have the discretion not to apply it in any individual case. *Id.* at 1185. Thus, *Markgraf*, to the extent it is relevant, is contrary to the petitioners' position.

2. Has the Commission abdicated its responsibility?

■ The petitioners next argue that because the Commission has yet to issue a formal order in any case arising under § 2(a)(19)—except to grant an exemption from the strictures of that provision, as authorized by § 6(c) of the Act—the Commission has abdicated its responsibility to enforce § 2(a)(19). Accordingly, they say that this court should create a means by which a private party can compel the Commission to conduct an investigation that may lead to the issuance of an order.

That the Commission does not issue declaratory orders under § 2(a)(19) does not demonstrate that the Commission has abandoned its responsibility to enforce the statute. The Commission has never denied its responsibility to enforce, and has in fact enforced, § 2(a)(19) by advising investment companies informally that certain directors might in its view be "interested persons." Furthermore, the Commission has recently taken action that is directly relevant to the petitioners' specific claim that a director is "interested" by virtue of his service on the boards of a number of funds in a family of funds. *See Amendments to Proxy Rules for Registered Investment Companies,* 59 Fed. Reg. 52689 (Oct. 19, 1994) (requiring "disclosure of the aggregate compensation of directors who serve on the boards of more than one fund in a fund complex").

That the Commission will, upon the receipt of a qualifying application, provide an exemption under § 6(c), does not advance the petitioners' claim that the SEC has abdicated its

responsibility to enforce § 2(a)(19); to the contrary, it is in part through the process of reviewing applications for an exemption that the Commission sees to it that investment companies and advisers comply with § 2(a)(19). The process for seeking an exemption is open and an investor who believes that a particular director is an "interested person" may participate by suggesting in writing that an exemption be denied—or, for that matter, that the Commission issue an order under § 2(a)(19). *See* 17 C.F.R. § 270.0–5(a) (any interested person may submit written comments); *see also Commission Policy and Guidelines for Filing of Applications for Exemption,* 50 Fed.Reg. 19339, 19340 (Apr. 30, 1985). Moreover, the Commission has recently declared its intention to issue an order under § 2(a)(19) when denying an application for exemption under § 6(c). *See, e.g., Matter of Founders Funds, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 76,427 at 77,-430, 1992 WL 210499 (Aug. 4, 1992).

Thus, we cannot agree that the Commission has refused to implement § 2(a)(19); the agency has merely chosen thus far to enforce it informally rather than formally. So far, it appears, the Commission has found that sufficient to induce compliance with the law. That the petitioners prefer a different means of enforcement is irrelevant, for the very reason underlying the decision in *Chaney:* the agency alone, and neither a private party nor a court, is charged with the allocation of enforcement resources.

3. Does any other law limit the SEC's discretion?

■ Having failed to point to anything in the 1940 Act limiting the Commission's discretion not to enforce § 2(a)(19) in a particular case, the petitioners direct our attention elsewhere. First, the petitioners claim that the Commission has limited its own discretion through the adoption of Commission Rule 0.5, 17 C.F.R. 270.0–5, which provides that:

The procedure herein below set forth will be followed with respect to any proceeding initiated by the filing of an application, or upon the Commission's own motion, pursuant to any section of the Act or any rule or

regulation thereunder, unless in the particular case a different procedure is provided: ... (c) The Commission will order a hearing on the matter, if it appears that a hearing is necessary or appropriate in the public interest or for the protection of investors, (1) upon the request of an interested person or (2) upon its own motion....

17 C.F.R. 270.0–5. The petitioners argue that in this regulation the Commission committed itself to ordering a hearing whenever (1) it is necessary or appropriate in the public interest or for the protection of investors, and (2) an interested person has submitted a request. By its own terms, however, Rule 0.5 applies only with respect to "any proceeding initiated by the filing of an application ... pursuant to any section of the Act...." *See, e.g., Matter of College Retirement Equities Fund and Teacher Insurance and Annuity Association of America*, 53 Fed.Reg. 2336, 2337 (S.E.C. January 27, 1988). Because, as we have seen, § 2(a)(19) is not a section pursuant to which one may institute a proceeding by filing an application, Rule 0.5 is of no relevance to the present case.

▮ Finally, the petitioners claim that the court may review the Commission's decision pursuant to § 555(b) of the Administrative Procedure Act:

> So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request or controversy in a proceeding, whether interlocutory, summary or otherwise, or in connection with an agency function. With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.

5 U.S.C. § 555(b). The petitioners argue that under § 555(b) any "interested person" (as that phrase is used in the APA) may compel the Commission to determine whether an investment company is complying with the "interested person" provisions of the Investment Company Act.

No court or agency has ever suggested that § 555(b) grants any interested person a right to compel agency action. Rather, § 555(b) is universally understood to establish the right of an interested person to participate in an on-going agency proceeding. *See, e.g., Nichols v. Board of Trustees*, 835 F.2d 881, 896–99 (D.C.Cir.1987) ("interested person" may intervene in on-going administrative process unless agency has valid reason to deny intervention). The petitioners point out, however, that the statute also confers upon any interested person a right to "appear before an agency ... in connection with an agency function." They interpret this to mean that the statute "unquestionably provides [them] with the right to a Commission determination as to whether an investment company is complying with the 'interested person' provision of the [1940] Act."

Whatever the meaning of a right to appear, that it means "the right to a determination" seems to us quite questionable.** Indeed, in this context, that interpretation seems quite wrong, for otherwise no refusal to act—with respect to enforcement or anything else—would be reserved to agency discretion, and § 701(a)(2) of the same APA (and *Chaney* ) would be rendered meaningless. Therefore, we conclude that the petitioners' argument is without merit.

### III. Conclusion

The SEC's decision not to initiate an investigatory hearing under § 2(a)(19) of the 1940 Act was in effect a decision not to enforce that provision in this particular instance. Because neither the Congress nor the Commission itself has provided any standard constraining the Commission's discretion to make such a decision, and there is no sign that the Commission has abdicated its statutory responsibility to enforce § 2(a)(19) generally, the Commission may decide not to initiate a proceeding free from judicial super-

---

** The point is foreshadowed in *William Shakespeare, King Henry the Fourth (Part I)*, Act 3, Scene 1, when Owen Glendower brags "I can call spirits from the vasty deep," and Hotspur replies, "Why, so can I, or so can any man; But will they come when you do call for them?"

vision. Consequently, the petition for review is

*Dismissed.*