**James Lutcher NEGLEY, Appellant**

v.

**FEDERAL BUREAU OF INVESTIGATION,**
**Appellee.**

No. 04–5348.

United States Court of Appeals,
District of Columbia Circuit.

Jan. 17, 2006.

**592**

Paul C. Vitrano, Prashant Kumar Khetan, Ross, Dixon & Bell, Washington, DC, for Appellant.

Oliver W. McDaniel, R. Craig Lawrence, Michael Joseph Ryan, Pamela D. Huff, Assistant U.S. Attorneys, Kenneth L. Wainstein, U.S. Attorney, U.S. Attorney's Office, Washington, DC, for Appellee.

Before HENDERSON and BROWN, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

*JUDGMENT*

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of the parties. For the reasons stated in the accompanying memorandum, it is

ORDERED AND ADJUDGED that the judgment of the district court be reversed and that the case be remanded to the district court for further proceedings consistent with the accompanying memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D. C. Cir. Rule 41.

*MEMORANDUM*

In this case, we review the district court's grant of summary judgment in a suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain records from the Federal Bureau of Investigation ("FBI"). We conclude that the district court erred in its application of res judicata and that summary judgment was otherwise inappropriate.

I

Under Department of Justice regulations governing FOIA requests, a person requesting "records held by a field office of the [FBI] ... must write directly to that FBI ... field office address." 28 C.F.R. § 16.3(a). On October 7, 1999, appellant James Lutcher Negley submitted a FOIA request to the Sacramento field office of the FBI, seeking records concern-

ing him "maintained at the FBI's field office in Sacramento, California." Negley eventually obtained fifty pages of documents, several with redactions pursuant to various FOIA exemptions. *See* 5 U.S.C. § 552(b). In addition, the FBI stated it was withholding one page pursuant to a FOIA exemption. On January 23, 2001, Negley filed a FOIA action in federal district court in Texas. At issue in that action was: (1) whether the FBI was withholding additional records, and (2) whether the one page the FBI admitted withholding and the redactions on the other pages fell within applicable FOIA exemptions. The district court rejected those arguments, and entered judgment against Negley.

When Negley studied the pages that he obtained from the FBI's Sacramento field office, he found references to file number "149A–SF–106204." Negley concluded these references were to a San Francisco file, so on January 16, 2002, he submitted a FOIA request to the San Francisco field office of the FBI, seeking "any records about me maintained at and by the FBI in your field office." In a supplemental request, he specifically referenced file number "149A–SF–106204–Sub S–1575." A letter from the U.S. Department of Justice Office of Information and Privacy, dated September 30, 2002, informed Negley that, although he is not the subject of any "main file" in San Francisco, he is "mentioned briefly" in file 149A–SF–106204, "the subjects of which are other individuals or organizations." The letter went on to explain that the relevant records in 149A–SF–106204 were merely duplicates of records Negley had previously obtained from the Sacramento office. The letter added: "Please be advised that the records that consist of the San Francisco Field Office's 149A–SF–106204–S–1575 are not … responsive to your request for records concerning you." Though the relevant records in 149A–SF–106204 were duplicates of records the FBI's Sacramento office had already made available, the FBI's San Francisco office eventually made available 46 pages, several with redactions, and it stated it was withholding one page.

On October 17, 2003, Negley filed this action, in which he argues: (1) the FBI is withholding additional records, and (2) the one page the FBI admits it is withholding and the redactions on the other pages do not fall within applicable FOIA exemptions. The district court granted summary judgment based on res judicata, citing Negley's previous lawsuit to obtain records from the FBI's Sacramento office. The district court also relied on an FBI affidavit.

## II

In basing its decision on res judicata, the district court made clear it was not referring to the previous adjudication of a specific factual or legal issue but to the previous adjudication of the entire cause of action. The district court's application of res judicata in this context was error.

As the district court noted in its statement of the res judicata doctrine, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In this context, the term "cause of action" is used broadly to refer to any two actions that have the same "nucleus of facts." *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir.1984); *see also Drake v. FAA,* 291 F.3d 59, 66 (D.C.Cir.2002); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 946–47 (D.C.Cir.1983).

A lawsuit aimed at obtaining FBI records stored in Sacramento as of October 7, 1999, does not involve the same "nucleus of facts" as a lawsuit aimed at obtaining FBI records stored in San Francisco as of Jan-

uary 16, 2002. True, the FBI's San Francisco office eventually made available duplicates of the same 46 pages of documents that the Sacramento office had previously made available, and it withheld a duplicate of the same single page the Sacramento office had previously withheld, but the FBI concedes that these San Francisco records were not absolutely identical to those involved in the prior proceeding, at least as regards "internal administrative markings." Moreover, suppose the San Francisco office has an additional file on Negley that it is not releasing. In the previous lawsuit arising from Negley's Sacramento record request, the district court determined that the FBI's Sacramento office had no additional records responsive to that request, but that finding does not resolve the question whether the FBI's *San Francisco* office has additional records responsive to the *San Francisco* request, which covers not only a different location but also a different time. In this regard, it is worth noting that FOIA does not limit a party to a single request, and because the records maintained by an FBI office may change over time, a renewal of a previous request inevitably raises new factual questions. Because the two lawsuits, one to obtain records stored in Sacramento and the other to obtain records stored in San Francisco, do not "share the same 'nucleus of facts,' " res judicata does not apply. *Drake,* 291 F.3d at 66 (quoting *Page,* 729 F.2d at 820); *see also Apotex, Inc. v. FDA,* 393 F.3d 210, 217–218 (D.C.Cir.2004). It may well be that Negley is collaterally estopped from relitigating the application of FOIA's exemptions to the one page the FBI admits it is withholding and to the redactions on the other 46 pages, but the district court did not address that question.

### III

Though the district court found Negley's claim barred by res judicata, it went on to consider on the merits whether "the FBI's search for responsive documents was inadequate and [whether] there exist additional documents responsive to [Negley's] FOIA request." We therefore also address this issue.

FOIA requires "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ..., [to] make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). A party requesting records may file an action in federal district court to compel access, and the court determines the matter de novo, but in any such action, the "court shall accord substantial weight to an affidavit of an agency." *Id.* § 552(a)(4)(B). Moreover, "[a]gency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (internal quotation marks and citation omitted). The principal standard to which the agency is held is one of reasonableness. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Meeropol v. Meese,* 790 F.2d 942, 952 (D.C.Cir. 1986); *see also Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir.1998); *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990). Moreover, a district court may grant summary judgment based on an agency affidavit, so long as the record contains no contrary evidence or evidence of agency bad faith. *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *Hayden v. National Sec. Agency/Central Secret Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979). In addition,

"[w]hen a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return...." *Campbell*, 164 F.3d at 28. However, an agency "must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry. Consequently, the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Id.*

Here, the trial court found the FBI's affidavit "sufficient to demonstrate the adequacy of the FBI's search." The court noted that the affidavit "identifies the affiant, his respective position within the FBI, the search term used, ... the treatment of [Negley's] FOIA request[,] ... the FBI's procedure regarding FOIA requests[,] and the mechanics and scope of a [Central Records System] search." The affidavit also asserts the FBI's full compliance with the requirements of FOIA. Negley, however, argues the affidavit is inadequate because it does not specifically indicate a search of "File Sub–S" and "File S–1575." These terms appear to refer to files somehow related to file 149A–SF–106204, because "SUB S" and "S–1575" sometimes appear as suffixes to "149A–SF–106204" on documents the FBI made available.

In our assessment, the record, including the correspondence between Negley and the FBI, raises sufficient doubt about the scope of the FBI's search to preclude summary judgment. In *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C.Cir.1999), we indicated that an agency should "expressly demonstrate[ ] ... that [it] focused its search on the specific document[s] requested." Negley's handwritten amendment to his original FOIA request stated: "As you can see my San Francisco FBI file no. is 149A–SF–106204–Sub S–1575. Please amend my 1/16/2002 FOIA request to your office to include this file no. as well as any others." Subsequent correspondence between the parties does not refer precisely to "149A–SF–106204–Sub S–1575," instead referring variously to "149A–SF–106204–S–1575," "149A–SF–106204–1575," and "Sub S–1575." Other evidence in the record refers to "149A–SF–106204 SUB S" and "149A–SF–106204 SUB S0–3041." Nowhere does the FBI clarify whether any of these various file references are synonymous, and more important, whether it actually searched "149A–SF–106204–Sub S–1575" as Negley explicitly requested, assuming such a file exists. While we can make reasonable guesses about the answers to these questions, in the absence of specific clarification, we think the district court erred in finding the FBI's affidavit sufficient to support summary judgment.