# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50912

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2014

Lyle W. Cayce
Clerk

JAMES LUTCHER NEGLEY,

Plaintiff–Appellant,

versus

FEDERAL BUREAU OF INVESTIGATION,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 5:12-CV-362

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The Federal Bureau of Investigation ("FBI") interviewed James Negley one night in 1995 as part of its investigation into the Unabomber, precipitating

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50912

a series of Freedom of Information Act ("FOIA") requests and related lawsuits that continue to this day. Negley appeals a protective order and summary judgment in a suit alleging the FBI inadequately responded to his FOIA request. Because Negley has not identified a genuine dispute as to a material fact regarding the adequacy of the FOIA search, we affirm.

I.

In 1995, the *Washington Post* printed a manifesto written by a domestic terrorist commonly referred to as the Unabomber. Negley went to the Chico State University library the day the manifesto was scheduled to be published and offered the librarian twenty dollars to copy the article and leave it for him at his hotel. After Negley left, the librarian called the authorities and reported Negley's suspicious behavior; the FBI contacted him by phone and sent an agent to interview him at his hotel. After the interview, the FBI ruled Negley out as a suspect.

In 1999, Negley submitted a FOIA request to the FBI's field office in Sacramento, California, then sued ("*Negley I*") challenging the adequacy of the FBI's production. The district court granted summary judgment to the FBI. Negley submitted another FOIA request in 2002, this time to the FBI's field office in San Francisco. Negley sued ("*Negley II*"), again questioning the adequacy of the production. That matter worked its way through the federal courts until 2012, when the District of Columbia Circuit affirmed the summary judgment.

During the *Negley II* litigation, Negley filed another FOIA request with the FBI seeking all of its records relating to him. He eventually sued on this as well, arguing that the FBI had not adequately responded to his FOIA request. He served a request for admissions and productions on the FBI, asking it to confirm or deny a wide variety of investigative actions aimed at him,

No. 13-50912

including surveillance, breaking into his house, and seizing possessions there. In response, the FBI successfully asked the district court for a protective order. The court granted the FBI's motion for summary judgment, finding that it had performed an adequate search in response to Negley's FOIA request.

II.

A threshold issue is whether claim preclusion or issue preclusion bars the district court from determining that the FBI's search was unreasonable. The FBI invoked res judicata, commonly referred to as claim preclusion,[1] and the district court arguably based its decision in part on that doctrine. On appeal, the FBI contends that collateral estoppel (issue preclusion) bars the court from addressing the reasonableness of the FBI's search. The FBI's attempt to change horses midstream is unavailing, however, because neither doctrine applies.

At issue is the district court's decision in *Negley II*. Negley was suing the FBI for not complying with its obligations regarding his 2002 FOIA request. During that litigation, Negley filed the 2009 FOIA request that is the subject of this appeal; the court ordered the FBI to conduct a search in response to the 2002 request and eventually held, in response to a contempt motion, that the agency was justified in limiting that search to only those documents in existence at the time of the 2002 request. *Negley v. FBI*, 766 F. Supp. 2d 190, 194 (D.D.C. 2011). The court later granted summary judgment, stating that the "search and production in response to the 2002 request were reasonable under the specific circumstances of this case." *Negley v. FBI*, 825 F. Supp. 2d

---

[1] "Res judicata" is also sometimes used as a broader term to encompass both claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). The parties' briefs, however, treat the district court deciion as invoking only claim preclusion.

No. 13-50912

63, 71 (D.D.C. 2011). The FBI claims that, because it also conducted a search in response to the 2009 request during the *Negley II* litigation, the district court's decision established the adequacy of the search that was motivated by the 2009 request.

It is that limitation on the previous case that keeps preclusion from applying. For issue preclusion to apply, the previous determination must have been, among other things, "necessary to the decision."[2] The *Negley II* court was not faced with a challenge to the adequacy of the FBI's search in response to Negley's 2009 FOIA request, which the district court itself acknowledged had been made without that court's knowledge and which more expansive than the 2002 request. *Negley*, 766 F. Supp. 2d at 191–92. Even if the FBI had identified some unequivocal expression of confidence from the district court about the adequacy of the search in response to the 2009 request, the FBI has not shown how such a determination was at all necessary to the court's decision on the adequacy of the search initiated in response to the 2002 request. At most, in holding that the FBI was justified in limiting its search on the 2002 request to documents existing in 2002, that court relied on the fact that the FBI was also responding to Negley's 2009 FOIA request, *see Negley*, 825 F. Supp. 2d at 71–72, but any statement of the district court about the adequacy of the presently disputed search is irrelevant to that analysis.

Claim preclusion is likewise inapplicable: It requires that the previous suit involved "the same claim or cause of action,"[3] meaning both actions must be based on "the same nucleus of operative facts."[4] Here, the two actions are

---

[2] *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)).

[3] *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (quoting *Swate v. Hartwell*, 99 F.3d 1282, 1286 (5th Cir. 1996)).

[4] *Southmark*, 163 F.3d at 934 (quoting *In re Baudoin*, 981 F.2d 736, 743 (5th Cir.

4

No. 13-50912

based on two different FOIA requests of different scope made years apart. Those requests might seek information related to a common nucleus of operative facts (whether the FBI performed any as-of-yet undisclosed surveillance of Negley), but the suits are in response to distinct FOIA requests and the alleged failures of the FBI flowing from those requests. This is the same conclusion that the D.C. Circuit reached in *Negley II*, in which the district court had erroneously applied claim preclusion based on *Negley I*. *See Negley v. FBI*, 169 F. App'x 591, 593–94 (D.C. Cir. 2006). Neither issue preclusion nor claim preclusion applies to this case.

## III.

Negley's main claim on appeal is that the district court erred in granting summary judgment because the FBI did not establish that its search was reasonable. FOIA does not require an agency to show that it has identified every document that is responsive to a request, but only that "it performed a search reasonably calculated to yield responsive documents." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010). The agency can satisfy that requirement with affidavits that provide a detailed description of its search methods.[5] Some courts have stated that satisfying this requirement shifts the burden to the plaintiff to demonstrate bad faith,[6] and that is the rule the district court applied. Negley contends that the court erred in requiring him to show bad faith, claiming that his evidence goes to the adequacy of the search.

---

1993)).

[5] *See Batton*, 598 F.3d at 176; *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

[6] *See, e.g.*, *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010) ("Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search.").

The burden-shifting statement relied on by the district court is an incomplete statement of the rule.  The court was correct that the agency's affidavits are entitled to a "presumption of good faith," but that does not mean that the agency is entitled to a presumption that its search was adequate.  Instead, an agency's affidavits are accorded a "presumption of legitimacy" that "assume[s] that the [agency] is telling the truth in its affidavits." *Batton*, 598 F.3d at 179.  Absent countervailing evidence by the plaintiff, the court will assume that the agency is telling the truth about its search, but that does not mean that the court must accept the agency's assertion that the search was adequate.

A plaintiff can overcome the presumption of legitimacy only by showing that the agency acted in bad faith, *see id.*, but he can defeat summary judgment on the adequacy of the search by presenting evidence that the affidavits do not describe an adequate search.  A contrary rule would impose too high a burden on the plaintiff and would be contrary to the summary-judgment standard, allowing an agency affidavit definitely to settle the adequacy of a search in the face of evidence that the search was inadequate.  Instead, the plaintiff can prevent summary judgment by introducing evidence that creates a genuine dispute as to the adequacy of the search.

This approach is consistent with the approach taken by the D.C. Circuit, which has stated that a plaintiff can provide countervailing evidence about a search to call into question its adequacy and thereby render summary judgment inappropriate. *See Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979).  As the D.C. Circuit explained in *Oglesby*, 920 F.2d at 68, the affidavit describing the search needs to be detailed partly because such detail "is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search."  Other courts are also careful to separate the issues, stating that the plaintiff has the burden to show bad faith once the agency has established that its search was

reasonable, not just once the agency has provided affidavits that would be enough to establish reasonable searches standing alone.[7]

A plaintiff cannot call into question the adequacy of the search by engaging in "[m]ere speculation that as yet uncovered documents may exist." *Safe-Card Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). To justify reversal, Negley needs to point to some genuine dispute as to a material fact that made summary judgment inappropriate. He identifies two arguments he made in the district court, but neither is sufficient.

The first set of facts to which Negley points can be grouped together as those facts that are not relevant to the adequacy of the search. One of them is the FBI's decision no longer to rely on the Privacy Act to justify certain withholdings. The district court correctly concluded that that decision does not bear on the adequacy of the search. Negley has not identified the relevance of that fact or any relevant inference to which it gives rise, and we can think of none. Negley's argument that the FBI failed timely to notify him of their referral of documents fails for the same reason: Negley has identified FBI practices with which he disagrees, but that is not sufficient to survive summary judgment.

Negley's second main argument in contesting summary judgment is that the FBI's search was inadequate because it failed to follow up on a lead that it discovered while processing the request. On March 18, 2013, Negley's attorney received as part of a disclosure a copy of a 2002 fax transmittal sheet containing a handwritten notation that appears to read "case is still pending

---

[7] *See, e.g., Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("[O]nce the agency has shown by convincing evidence that its search was reasonable, . . . then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith. Summary judgment would be improper if the adequacy of the agency's search were materially disputed on the record.") (citations omitted).

500,000 pp in file 42,000 misc evidence."[8]  Negley contends that this notation indicates there may be hundreds of thousands of pages that were not discovered as a part of the previous search.

Even if we accept *arguendo* that the notation indicates that there are potentially 500,000 documents not discovered during the earlier search, that would not affect whether the FBI conducted an adequate search.  For a search to be adequate, the law requires only that it be "reasonably calculated to yield responsive documents." *Batton*, 598 F.3d at 176.  *Post hoc* evidence that the search missed responsive documents does not render it inadequate.

Negley relies on a line of cases from the D.C. Circuit holding that an agency searching for documents responsive to a FOIA request has not performed an adequate search if its initially reasonable search turned up leads that it did not investigate further.  The Fifth Circuit has not yet considered whether to adopt this additional requirement for FOIA searches, and such a doctrine would not help Negley anyway.

The principal case for this doctrine is *Campbell v. United States Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998).  There, the FBI searched its Central Records System but not its "tickler" files, which are "duplicate file[s] containing copies of documents, usually kept by a supervisor," because they rarely produce additional responsive documents. *Id.* at 27.  Some of the documents that the FBI did discover, however, made reference to tickler files, indicating that those files may have had responsive documents.  The D.C. Circuit held that the FBI's search was inadequate because it did not search the tickler files for relevant documents in response to this lead. *Id.* at 28.

The D.C. Circuit limits this requirement in a way relevant here.  In

---

[8] The handwriting makes it difficult to tell what exactly the note says, but this reading has not been disputed by the parties.

*Campbell*, the court said the plaintiff is required to establish "a sufficient predicate to justify searching for a particular type of record." *Id.* The plaintiff in *Campbell* had a clear lead identifying a particular type of record that could be searched, namely, the tickler files. Likewise, in *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999), the court described *Campbell*'s relevant holding as obliging an agency to search a place "if the agency has reason to know that certain places may contain responsive documents." *Id.* at 327 (citing *Campbell*, 164 F.3d at 28).[9]

Under this caselaw from the D.C. Circuit, even if we adopted the requirement that agencies responding to FOIA requests investigate leads that arise during their investigations, such leads must contain sufficient information to indicate the type of record or location that the agency must search. A naked suggestion that additional files exist is not sufficient. The lead must include some information that tells the agency how to change its search to make it reasonable again. The contrary construction of the rule would undermine our requirement that an agency establish only that its search was reasonable. Allowing an indication that more records exist, without requiring an indication of the types of records or their location, would change the agency's obligation from showing a reasonable search to proving a negative, namely, that there

---

[9] *Valencia-Lucena*, 180 F.3d at 328, also discusses an affirmative obligation on the part of the agency to contact agency personnel "if there is a close nexus . . . between the person and the particular record." That does not require the FBI in this case to contact whoever wrote the notation on the fax sheet. *Valencia-Lucena* involved a FOIA request to a particular, physical logbook that had already been identified as a likely source of responsive information. The Coast Guard could not locate the book, but the court held that the Coast Guard should have contacted the lieutenant who had been in possession of the book at trial. The logbook still satisfied the requirement that a particular type of record or location be identified. And the D.C. Circuit even recognized the limited nature of the obligation to contact, stating that it applied "[a]bsent any indication that an inquiry of [the agent] would be fruitless . . . because the storage of the logbook was controlled by other persons or by internal procedures." *Id.* Expanding the contact obligation beyond these limited circumstances would unjustifiably expand the scope of what an adequate search requires.

No. 13-50912

existed no more responsive documents.

IV.

Negley maintains that the district court erred in granting the FBI's motion for a protective order under Federal Rule of Civil Procedure 26(c). We review the grant of a discovery order for abuse of discretion. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994).

It is within a district court's sound discretion to halt discovery in a FOIA case until after action on a motion for summary judgment.[10] As in many FOIA cases, Negley was faced with uncontroverted agency affidavits establishing the reasonableness of the search, and he could point to nothing creating a genuine dispute as to a material fact that would bear on the adequacy of the search. As the district court concluded, Negley's discovery would have asked the FBI whether it had conducted investigations of him and to produce related documents, essentially using discovery to replace FOIA. Negley has not identified any way in which the district court abused its discretion in so limiting discovery.

AFFIRMED.

---

[10] *See, e.g.*, *Maynard*, 986 F.2d at 556 n.8; *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008).